IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STRECK, INC., a Nebraska Corporation,<br><br>      Plaintiff,<br><br>v.<br><br>STEVEN RYAN, CAROL RYAN and BARRY UPHOFF,<br><br>      Defendants. | Case No. ___<br><br>**COMPLAINT** |

Streck, Inc. ("Streck") for its claims against Steven Ryan ("S. Ryan"), Carol Ryan ("Carol Ryan") and Barry Uphoff ("Uphoff"), states and alleges as follows:

## PARTIES

1. Streck is a corporation incorporated in the State of Nebraska with its principal place of business in Sarpy County, Nebraska.

2. a. S. Ryan is a resident and citizen of Colorado and served as a member of Streck's Board of Directors from November 2014 until July 2016.

    b. Carol Ryan is a resident and citizen of Illinois and served as trustee of her father's revocable trust at all relevant times concerning the allegations in this Complaint.

    c. Uphoff is a resident and citizen of California and served as a member of Streck's Board of Directors from April 2007 until October 2015.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1332, because the amount in controversy in this case exceeds $75,000 and involves citizens of different states.

4.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Streck's claim occurred in this judicial district.

## BACKGROUND FACTS

**A.   Overview of Streck's Business**

5.   Streck is a recognized world leader in cell and biological sample stabilization technology which includes the Cell-Free DNA BCT®, a proprietary line of blood collection tube products. Streck's Cell-Free DNA BCT® products, manufactured in Nebraska, are sold throughout the world.

6.   The market for Streck's products is competitive. Streck has invested substantial time, effort, and money in order to compete with other companies operating in the same industry and seeking the same customers and market share as Streck. Streck has distinguished itself from competitors by, for example, by developing its innovative proprietary product lines and assuring consistently high quality of its products and services.

7.   Over many years, Streck has made substantial investments in the development of the Cell-Free DNA BCT®, which incorporates numerous trade secrets and other confidential information.

8.   Streck's success is dependent on its ability to maintain the confidentiality of its trade secrets and confidential information, including (by way of illustration) its technical product information and technology, unique chemical compositions, product testing data, customer and pricing information, marketing strategies, sales performance analysis, product information, and company initiatives.

9.   Through Streck's investment in product development, meeting or exceeding customer expectations, and maintaining the confidentiality of its trade secrets and confidential

information, Streck has established itself as a premier innovator and supplier of blood collection tube products.

### B. Streck's Board of Directors and Corporate Governance

10. The affairs of Streck are managed by a Board of Directors, and the Directors receive certain confidential information in order to assist in their decision-making responsibilities involved with managing Streck.

11. Streck has adopted Amended and Restated Bylaws ("Bylaws") to govern the conduct of the Board and its Directors.

12. Under Article III, Section 15 of the Bylaws, Streck's Directors are bound by explicit duties of confidentiality concerning Confidential Information entrusted by Streck in furtherance of the Board's management of Streck's affairs.

13. Streck's Bylaws define "Confidential Information" as:

> [A]ll technical and business information concerning the corporation disclosed by the corporation to the Director in any manner or form, whether specifically identified as confidential or not. It includes, but is not limited to, all written and oral information, documents, projections and summaries relating to the corporation, any financial plans, records and projections, marketing plans, business strategies and relationships with third parties, client lists, present and proposed products, trade secrets, management presentations, summaries and analyses, financing strategies and information, and information regarding customers and suppliers, employees and affiliates or any potential investors or purchasers of the corporation.

14. By accepting his or her appointment or election to Streck's Board, each Director is under a duty not to disclose Streck's Confidential Information to any third party, to use Streck's Confidential Information solely in the furtherance of Streck business, and to exercise a reasonable duty of care to protect Streck's Confidential Information.

### C. CFGenome Use of Streck's Trade Secrets and Confidential Information

15. Unknown to Streck, CFGenome LLC ("CFGenome") was formed in June 2014. Dr. Wayne Ryan ("Dr. Ryan"), the founder of Streck, together with Dr. M. Rohan Fernando ("Dr. Fernando") and Gary Krzyzanowski ("Mr. Krzyzanowski"), both former employees of Streck, were primarily responsible for the formation of CFGenome. Dr. Ryan, Dr. Fernando, and Mr. Krzyzanowski have significant experience developing and marketing Streck's Cell-Free DNA BCT® during their employment and affiliation with Streck, and had access to significant amount of Streck's confidential information and trade secrets.

16. At the time CFGenome was formed, Dr. Ryan, Dr. Fernando, and Mr. Krzyzanowski were affiliated with or employed by Streck.

17. CFGenome was formed to compete directly with Streck by taking advantage of the collective knowledge of Streck's trade secrets and confidential information attained by CFGenome's founding members while employed by Streck.

18. CFGenome currently produces a blood collection tube product derived from trade secrets and confidential information involved with Streck's Cell-Free DNA BCT®, and is attempting to divert Streck's customers and vendors by using Streck's trade secrets, Confidential Information, reputation, and good will for its own commercial profit.

19. Streck has filed an Amended Counterclaim and Third Party Complaint against CFGenome, Dr. Fernando and Mr. Krzyzanowski in an action filed in this Court at Case Number 4:16-cv-03130-JMG-CRZ, Doc. No. 4:16-cv-03130-JMG-CRZ (the "CFGenome Action").

20. Streck has filed this Complaint as a separate action because it involves S. Ryan and Uphoff's duties as directors of Streck, and Carol Ryan's knowing participation in the alleged breaches of fiduciary duties as alleged herein.

21. Dr. Ryan has not been named as a party in this action or the CFGenome Action primarily because he died on November 3, 2017, and he was in poor health in the months leading up to his death.

### D. S. Ryan's Participation in CFGenome

22. S. Ryan is the son of Dr. Ryan and became a shareholder of Streck in September 2014 when his sister, Carol Ryan, as Trustee of the Wayne L. Ryan Revocable Trust, "gifted" 30,000 shares owned by the Trust to S. Ryan, Uphoff and herself (each receiving 10,000 shares).

23. On or around November 18, 2014, S. Ryan was elected to Streck's Board of Directors.

24. Within two days of his election to Streck's Board of Directors, S. Ryan began soliciting nonpublic Confidential Information regarding Streck's product groups, including Streck's blood collection tube business and sales. In response to S. Ryan's requests, all Directors were provided sales information by product group, including information relating to the highly profitable sales of blood collection tubes.

25. On or around January 27, 2015, Streck provided to the Board a financial update detailing Streck's financial performance through the most recent business cycle as well as an overview of Streck's assets.

26. Despite this normal disclosure of Streck's performance provided to the Board, S. Ryan demanded that Streck provide additional detailed financial information, which Streck provided.

27. Throughout his tenure on Streck's Board, S. Ryan continued to make requests for nonpublic Confidential Information regarding, among other things, Streck's business operations

and sales by product groups, including Confidential Information related to Streck's blood collection tube product group, and customer and marketing information.

28. Without notice, S. Ryan abruptly resigned as a Director of Streck on or around July 6, 2016.

29. After S. Ryan resigned as a Director of Streck, Streck discovered that S. Ryan was working for CFGenome. Specifically,

    a. Streck has discovered that S. Ryan has described himself as a manager of CFGenome since August 2016 and, at one point, he was listed as the CFGenome contact on its website.

    b. Less than a month after he resigned from Streck's Board, S. Ryan, along with Dr. Fernando and Mr. Krzyzanowski, appeared as representatives of CFGenome at the American Association for Clinical Chemistry's annual conference.

    c. S. Ryan's sister, Stacy Ryan, has recently conveyed by e-mail that she is in possession of evidence indicating that while S. Ryan was a director of Streck, S. Ryan and his sister, Carol Ryan, encouraged their father to set up a "revenge company" to compete with Streck.

30. Since the CFGenome Action was filed, Streck has learned that CFGenome is competing with Streck in the blood collection tube industry by using Confidential Information belonging to Streck.

31. Specifically, Streck learned that CFGenome and Dr. Fernando approached a customer of Streck regarding selling a competing blood collection tube product, and that S. Ryan is participating in the marketing efforts of CFGenome.

4814-8868-3854.4

32. S. Ryan improperly used his position as a Director of Streck to obtain Confidential Information relating to Streck's blood collection tube business and other nonpublic information related to Streck's business and customers to assist CF Genome in directly competing with Streck in its blood collection tube business. S. Ryan was in possession of Confidential Information concerning Streck's blood collection tube business and other nonpublic information because he was a Director of Streck and is now using it for the benefit of CFGenome, its employees, and CFGenome's commercial activity without authorization from Streck.

33. As a result of S. Ryan's disclosure of Streck's Confidential Information to CFGenome, and CFGenome's use of this Confidential Information, and S. Ryan's failure to disclose the existence of CFGenome to Streck and its Board of Directors, CFGenome has been able to unfairly compete with Streck as alleged in the CFGenome Action.

34. Further, Streck has now learned that, while S. Ryan was a director of Streck, he was providing confidential Streck information learned at Streck Board Meetings to third parties, and was using information he received as a Director of Streck in an attempt to further pending litigation against Streck brought by S. Ryan's father and Carol Ryan. These actions violated not only his fiduciary duty to Streck, but also the requirement that S. Ryan, as a director, maintain the confidentiality of Streck information.

E. **Uphoff's Failure to Disclose Activities of CF Genome**

35. Uphoff was a member of Streck's Board of Directors from April 2007 until October 2015.

36. In 2014, at Dr. Ryan's request and with Streck's CEO and President Connie Ryan's full support, Streck underwent a sales process in an attempt to find a purchaser to purchase Streck. Streck engaged Duff & Phelps to facilitate the sales process.

37. Uphoff's private equity firm, Capricorn Healthcare, participated in the sales process through Uphoff, making offers to purchase Streck throughout 2014 and into 2015.

38. During the sales process, Dr. Ryan, with Uphoff's assistance and knowledge, secretly formed CFGenome to directly compete with Streck.

39. Specifically, Uphoff participated in communications with the University of Nebraska (on whose premises Dr. Ryan's new company was going to operate) in 2014, and secretly assisted Dr. Ryan in establishing this competing company.

40. Uphoff further knew in 2014 that Streck employees were intending to leave Streck and work at Dr. Ryan's new competing company, and while he was a member of Streck's Board of Directors, never disclosed this information to Streck management or its Board of Directors.

41. Instead, knowing that Dr. Ryan wanted to use CFGenome to compete against Streck, Uphoff knowingly encouraged Dr. Ryan to pursue CFGenome.

42. Upon information and belief, Uphoff encouraged Dr. Ryan to suddenly call off Streck's sales process in August 2014 which allowed Dr. Ryan and others to set up a competing company to harm Streck and its Chief Executive Officer, Connie Ryan.

43. Calling off the sale was critical to the success of setting up a "revenge company" because if the sale of Streck been completed in 2014, the buyer would have required that Dr. Ryan sign a non-compete agreement that would have precluded him from establishing a competing business.

44. As a result of the sales process being called off, Streck has been engaged in various pieces of litigation, including a shareholder dispute. A sale to a third party would have resolved the shareholder issues.

4814-8868-3854.4

45. Uphoff had a personal and vested interest in trying to stop the sales process. Immediately following Dr. Ryan's calling off the sales process, Uphoff made an offer to purchase certain shares of Streck at a reduced value. Uphoff, though Capricorn Healthcare, made yet another offer to purchase Streck in 2015.

46. Had Uphoff fulfilled his fiduciary duties to Streck and informed Streck of the fact Dr. Ryan was establishing a competing business, Streck could have been in a position to address the issue. For example, Streck could have suspended the sales process, limit its continued disclosure of proprietary information to third parties, and reduce the costs incurred in continuing the sales process by at least $150,000.

47. Streck did not become aware of Uphoff's involvement in the establishing of CFGenome until 2017 following the production of documents pursuant to a public records request made to the University of Nebraska.

48. Uphoff's failure to disclose his knowledge regarding CFGenome to the Streck Board of Directors further allowed S. Ryan and CFGenome to gain access to and use Streck's trade secrets and Confidential Information to set up a competitor to Streck in the profitable blood collection tube business.

49. Uphoff also knew that S. Ryan was seeking information as a Director directly related to the blood collection tube business and failed to disclose his knowledge of the competing company to the Streck Board of Directors while serving as a director until October 2015.

F.  **Carol Ryan's Actions**

50. Carol Ryan was appointed Trustee of the Wayne L. Ryan Revocable Trust in 2014. As Trustee, Carol Ryan requested to attend every meeting concerning the 2014 sales process in

9

4814-8868-3854.4

which Streck was engaged. However, when invited to attend certain informational meetings that Duff & Phelps attempted to schedule, Carol Ryan refused to attend.

51. Carol Ryan knew that her father was setting up CFGenome to compete with Streck, and knew that Barry Uphoff was involved in setting up CFGenome. Carol Ryan knowingly participated in the breaches of fiduciary duty committed by Uphoff.

52. Carol Ryan knowingly participated in the scheme to damage Streck by encouraging Dr. Ryan to set up the "revenge" company and call off the Duff & Phelps sales process in August 2014, interfering with Streck's relationship with a prospective buyer.

53. After encouraging Dr. Ryan to call of the sales process, Carol Ryan then approached a private equity firm in Chicago and encouraged that firm to make an offer to purchase Streck, despite the fact this private equity firm had already been deemed unsuitable as a purchaser of Streck during the Duff and Phelps sales process.

G. **Receipt of Voting Stock of Streck**

54. While Uphoff was a director of Streck, and after taking part in the plot to convince Dr. Ryan to call off the sale of Streck at the end of the sales process and form CFGenome as alleged, in September 2014, Uphoff received 10,000 voting shares of Streck that have a value of at least $150,000, paying nothing for these shares.

55. After encouraging his father to form CFGenome and compete with Streck, S. Ryan also received 10,000 shares of voting stock in Streck that have a value of at least $150,000, paying nothing for the shares.

56. The shares received by Uphoff and S. Ryan were compensation for their participation in the scheme to damage Streck as alleged herein and for their decision to join with

Carol Ryan in a concerted effort to remove Connie Ryan as CEO of Streck; Carol Ryan also received 10,000 shares of voting stock in Streck as part of the conspiracy paying no consideration.

57. The 30,000 shares of Streck voting stock were transferred from the Wayne Ryan Revocable Trust ("WRRT") by Carol Ryan, Trustee of the WRRT.

58. Carol Ryan as Trustee of the WRRT knew that Uphoff owed Streck a fiduciary duty of loyalty and knowingly participated in his violation of fiduciary duty by participating in the formation of CFGenome and transferring the voting shares to herself, Uphoff and S. Ryan.

59. Five weeks after the gift of the shares of Streck stock to S. Ryan, Uphoff, and Carol Ryan, the WRRT and Dr. Ryan filed a lawsuit against Connie Ryan and Streck claiming oppression against Connie Ryan and seeking relief under Neb. Rev. Stat. § 21, 20,162.

60. Streck elected to purchase the WRRT shares, and a trial to determine fair value has been scheduled in the District Court of Sarpy County to begin April 30, 2018.

## CLAIMS FOR RELIEF

### COUNT I

**BREACH OF FIDUCIARY DUTY AND KNOWING PARTICIPATION IN BREACHES**
**(Against All Defendants)**

61. Streck restates and realleges paragraphs 1-60 above as if fully set forth.

62. As members of Streck's Board of Directors, S. Ryan and Uphoff owed fiduciary duties to Streck and were obligated under Nebraska law to perform their duties in accordance with duties of reasonable care and loyalty.

63. S. Ryan and Uphoff violated their duties as alleged herein, and Carol Ryan knew of the breaches of fiduciary duty and knowingly participated in them as alleged herein.

64. Streck has been damaged by S. Ryan and Uphoff's breaches of fiduciary duties and by Carol Ryan's knowing participation in such breaches in an amount to be determined by a jury

11

but in excess of the $75,000 jurisdictional amount required for the exercise of jurisdiction by this Court.

## COUNT II

### BREACH OF CONTRACT
### (Against S. Ryan and Uphoff)

65. Streck restates and realleges paragraphs 1 – 64 as if fully set forth herein.

66. As members of Streck's Board of Directors, S. Ryan and Uphoff agreed to maintain the confidentiality of Streck's Confidential Information in accordance with Article III, Section 15 of Streck's Bylaws.

67. Streck's Bylaws further required S. Ryan and Uphoff to use Confidential Information solely for the benefit of Streck in furtherance of its business.

68. S. Ryan and Uphoff breached their obligations under Streck's bylaws as alleged herein.

69. Streck has been damaged by S. Ryan and Uphoff's breaches of their obligations under the Bylaws in an amount to be determined by a jury but in excess of the $75,000 jurisdictional amount required for the exercise of jurisdiction by this Court.

## COUNT III

### MISAPPROPRIATION OF CORPORATE OPPORTUNITY
### (Against All Defendants)

70. Streck restates and realleges paragraphs 1-69 as if fully set forth.

71. S. Ryan and Uphoff were directors of Streck and owed fiduciary duties to Streck. Carol Ryan knew S. Ryan and Uphoff were directors of Streck and owed fiduciary duties to Streck.

72. S. Ryan and Uphoff breached their fiduciary duties owed to Streck as alleged and by usurping a corporate opportunity belonging to Streck and directing such opportunity to CF

4814-8868-3854.4

Genome; at all relevant times, Carol Ryan knowingly participated in these breaches of fiduciary duty.

73. As a proximate result of said breaches of fiduciary duties and knowing participation in the breaches of fiduciary duty, Streck has been deprived of benefiting from profiting from the corporate opportunity belonging to Streck and suffered damages in the amount of profits Streck would have made if the corporate opportunity had not been diverted or the amount of profits wrongfully misappropriated by C.F. Genome, whichever is greater.

## COUNT IV

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE
### (Against Uphoff and Carol Ryan)

74. Streck hereby restates and realleges paragraphs 1-73 above as if set forth fully herein.

75. Uphoff and Carol Ryan knew that Streck had entered into a contract with Duff & Phelps pursuant to which Streck would be sold to a suitable buyer.

76. If the sales process were successfully completed, there existed an expectancy with the probability of future economic benefit for Streck, and Uphoff and Carol Ryan knew or should have known of this expectancy.

77. Uphoff and Carol Ryan encouraged Dr. Ryan to suddenly call of the sales process in mid-August 2014. If not for the conduct of Uphoff and Carol Ryan in encouraging Dr. Ryan to end the sales process, Streck was reasonably certain to have completed the sales process, which would have resolved the shareholder conflict currently ongoing.

78. Uphoff and Carol Ryan's conduct in interfering with the prospective relationship with a purchaser was intentional, improper, and unjustified.

79. Further, Uphoff and Carol Ryan's conduct in interfering with the prospective relationship with a purchaser of Streck was done for their own benefit. Following Dr. Ryan calling off the sales process in 2014, Uphoff submitted at least two offers to purchase Streck or shares of Streck, one almost immediately after the sales process was called off. Carol Ryan worked with a private equity company in Chicago, Illinois to make an offer to purchaser Streck also immediately after the sales process was called off. Moreover, they each received 10,000 shares of Streck voting stock having a value of at least $150,000 as part of the conspiracy.

80. As a direct and proximate result of Uphoff and Carol Ryan's wrongful interference with the prospective relationship, Streck has suffered damages in an amount to be determined by a jury.

## COUNT V

## DECLARATORY JUDGMENT

81. Streck hereby restates and realleges paragraphs 1-80 above as if set forth fully herein.

82. The shares that have been gifted to S. Ryan, Uphoff, and Carol Ryan were wrongfully transferred for no consideration five weeks before the oppression lawsuit was filed, and Streck requests the Court enter declaratory judgment that the transfer of the voting shares was wrongful and occurred while Uphoff was breaching his fiduciary duties and S. Ryan and Carol Ryan were knowingly participating in such breaches.

## **JURY DEMAND**

Streck demands a trial by jury on all issues triable by jury.

## **REQUEST FOR PLACE OF TRIAL**

Streck requests Omaha, Nebraska as the place of trial.

4814-8868-3854.4

**PRAYER FOR RELIEF**

WHEREFORE Streck prays for judgment in its favor on its claims against Steven Ryan, Carol Ryan and Uphoff, for general and special damages, including but not limited to Streck's lost profits and Defendants' ill-gotten gains, disgorgement of any payments made to Steven Ryan and Uphoff while serving as directors' of Streck, damages to compensate Streck for harm caused to Streck as a result of Defendants' wrongful activities, consequential damages, costs, and reasonable attorneys' fees as permitted by law, and all further relief the Court deems just and appropriate. Streck further prays for declaratory judgment as requested herein, and an order cancelling the transfer of the shares of Streck made for no consideration and as a result of the wrongful breaches of fiduciary duty or knowing participation in breach of fiduciary duty as alleged herein.

Dated this 29th day of December, 2017.

STRECK, INC., Plaintiff

By: */s/ Thomas H. Dahlk*
Thomas H. Dahlk #15371
Victoria H. Buter #23841
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, Nebraska 68102-2186
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
tom.dahlk@kutakrock.com
vicki.buter@kutakrock.com

4814-8868-3854.4