## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

STRECK, INC., a Nebraska
Corporation,

        Plaintiff,

v.

STEVEN RYAN, CAROL RYAN and BARRY
UPHOFF,

        Defendants.

Case No. 8:17-cv-00494

**STIPULATED PROTECTIVE ORDER**

        Plaintiff Streck, Inc. ("Plaintiff") and Defendants Steven Ryan, Carol Ryan, and Barry Uphoff ("Defendants") (collectively the "Parties") hereby agree to and enter into this Stipulated Protective Order (the "Protective Order") to limit the disclosure of confidential, proprietary business, personal, and/or financial information concerning the Parties, individuals not a party to the lawsuit, and/or this lawsuit, and to protect the confidentiality of such materials being produced. This Protective Order therefore is intended to protect against unauthorized disclosure of any such information and to ensure that such information will be used only for the purposes of this action and, pursuant to Court Order, in Case No. 4:16-CV-3130, *CFGenome, LLC & Dr. M. Rohan Fernando v. Streck, Inc. v. Gary Krzyzanowski*. It is agreed by and between Plaintiff and Defendants, through their undersigned counsel of record, and ordered by the Court as follows:

        1.      The Parties have sought, anticipate seeking or receiving, and/or anticipate disclosing, providing, or producing (collectively "disclosing") documents, testimony, and other information (collectively, the "Information" or "Discovery Material") that may contain confidential, proprietary business, personal, and/or financial information concerning the parties,

1

including information from the case captioned Case No. 4:16-CV-3130, *CFGenome, LLC & Dr. M. Rohan Fernando v. Streck, Inc. v. Gary Krzyzanowski*, pending in the United States District Court for the District of Nebraska, pursuant to Docket Entry Number 117 in that case.[1] This Protective Order shall govern the disclosure, maintenance, and use of all Information of these types, in any form whatsoever, unilaterally designated by Plaintiff or Defendants as containing confidential, proprietary business, personal, and/or financial information concerning the parties (the "Confidential Information"). Confidential Information so-designated by a party shall include, but not be limited to, any document, testimony, or response to a discovery request, including any extract, abstract, chart, summary, recording, transcription, note, or copy made therefrom, or any other tangible things that may be protected under Federal Rule of Civil Procedure 26(c) that is designated by Plaintiff or Defendants. The Parties request that the Court enter this Stipulated Protective Order for the purpose of preventing the disclosure and use of Confidential Information by any party or nonparty except as set forth therein.

2.      For purposes of this Order, Information considered to be Confidential Information includes, but is not limited to, all non-public materials containing information related to the following: proprietary business information; personal information; submissions of information to regulatory agencies and designated or requested for confidential treatment; proprietary policies and procedures; proprietary business strategies; financial or tax data; proprietary contracts; customer lists and information; competitive analyses; costs; pricing; current personnel; product and market development and planning; financial results, plans, and projections; or the financial affairs of any individual subject to discovery in this action.

---

[1] The Parties agree that any discovery obtained from Case No. 4:16-cv-3130 will retain the confidentiality designation placed thereon pursuant to the Stipulated Protective Order entered in that case under Docket Entry Number 96. To remove doubt, any document from Case No. 4:16-cv-3130 that is marked with an "Attorneys' Eyes Only" designation will remain subject to the heightened level of protection contemplated in that case, and shall not be disclosed to parties in this litigation.

3.     Provisions of this Order shall apply to (i) the parties presently named in this action and their counsel, including, in the case of parties other than individuals, their officers, directors, employees, members and agents and (ii) any other person or entity who produced Discovery Material in this action and who agrees to be bound by the terms of this Order.

4.     It shall be the duty of the party or a third party who seeks to invoke protection under this Order to give notice, in the manner set forth herein, of the Confidential Information to be covered hereby.  The duty of the other parties and of all parties bound by this Order to maintain confidentiality hereunder shall commence with such notice.

5.     Documents disclosed by Plaintiff to Defendants or by Defendants to Plaintiff may be designated as Confidential Information when a party, third party, or their counsel in good faith believes that such Confidential Information constitutes or reveals confidential, proprietary business, personal, trade secret, and/or financial information concerning the parties.

6.     Documents may be designated as Confidential Information in the following manner:

(a)     By imprinting the word "Confidential" on the first page or cover page of any document, if the whole document is to be designated as Confidential Information, or on each page, if fewer than all pages are to be designated as Confidential Information;

(b)     By imprinting the word "Confidential" next to or above any response to an interrogatory or request for admission; or

(c)     With respect to testimony that is not transcribed, by giving written notice to opposing counsel designating such portions of the testimony as Confidential Information no later than fourteen (14) days after the testimony is given.

7. Confidential Information shall be disclosed only to the following: (a) Defendants and Plaintiff; (b) their counsel of record; (c) any person retained or employed to assist the attorneys of record in this litigation including, but not limited to, other attorneys and/or other experts, court reporters and/or legal assistants, commercial litigation support service vendors, provided such vendors are subject to conditions of confidentiality in connection with material designated under this Protective Order; (d) potential witnesses in this litigation, provided such witnesses agree to be bound to this Protective Order as set forth in paragraph 8; (e) persons whose names appear on the documents as authors, addressees, or recipients; (f) the Court and its personnel; (g) the parties and the officers and employees of any party solely for the purpose of prosecuting, defending, and/or appealing the subject matter of this lawsuit; or (h) any mediator or settlement officer who is assigned to hear this matter, and his or her staff. Confidential Information shall be used only for the purpose of prosecution and defending this lawsuit and the lawsuit found at Case No. 4:16-CV-3130, *CFGenome, LLC & Dr. M. Rohan Fernando v. Streck, Inc. v. Gary Krzyzanowski*. Such Confidential Information shall be disclosed to the identified individuals solely for the purposes of assisting counsel of record with respect to this action, or for assisting any witness endorsed by any party, deposed by any party, or any person whom counsel in good faith considers to be a potential witness, but only insofar as necessary relative to matters pertaining to the testimony or anticipated testimony of such witness or potential witness in this action.

8. Any person not bound by this Protective Order who is given access to Confidential Information shall, prior to being given any such material, be informed of the provisions of this Protective Order, read this Protective Order, and execute an Undertaking, in the form annexed hereto as Exhibit A, indicating that he or she has read this Protective Order and

will abide by its terms. The original of any such Undertaking shall be retained by counsel for each party who intends to or does provide such persons any such material, until the conclusion of this action, including all appeals. The parties agree not to use these statements for any purpose other than monitoring and enforcing compliance with this Order.

9.      Any producing party or witness shall designate Confidential Information at the time of its production by marking any originals or copies of the documents or other tangible materials with the legend "Confidential."  If any document or other material is used as an exhibit at trial or otherwise displayed to the Jury, all markings indicating that the document or material had previously been designated by the party pursuant to this Order as "Confidential" shall be removed prior to offering the document or material into evidence or displaying same, and no mention shall be made of the previous designation of confidentiality. Such removal shall not alter the confidential nature and treatment of the document or material or the obligations of any party or third party under this Order.

10.      Any party or non-party witness shall have fourteen (14) days from the date of receipt of a copy of a transcript in which to designate all or portions of the testimony as "Confidential."  After such fourteen (14) days have expired, any testimony not designated shall no longer be deemed Confidential.  Such designation shall be made after transcription by sending written notice identifying the Information to be so designated by page and line numbers to counsel of record, the reporters, and the witness within the 30-day time period. The reporter shall stamp each page so designated as either "confidential."

11.      If Confidential Information is inquired about during a deposition:

(a)      The attorney for the party who asserts that such Information is Confidential Information may designate the beginning and ending points of such

testimony as Confidential Information or shall have fourteen (14) days after the attorney's receipt of the deposition transcript to notify the court reporter and opposing counsel, in writing, of the portions of the deposition transcript that shall be designated as Confidential Information. The court reporter shall promptly conform the original transcript by stamping the word "Confidential" on each page so designated, and counsel shall conform their copies of the transcript in accordance with the designation.

(b)     Until the expiration of the fourteen (14) days, the entire transcript shall be treated as Confidential Information and be subject to this Protective Order.

(c)     If the fourteen (14) days expires and no written designation of Confidential Information is made, the transcript shall no longer be subject to this Protective Order, unless specifically agreed to in writing by counsel for the Parties prior to the expiration of the fourteen (14) days.

12.     A deponent may be shown Confidential Information during examination in his or her deposition if:

(a)     the deponent is an author or was a recipient of such Confidential Information;

(b)     the Confidential Information was produced in this litigation by the deponent, the deponent's employer, another party on the same side as the deponent;

(c)     testimony or other circumstances indicate that the deponent previously had or was authorized to access such Confidential Information or knows its contents; or

(d)     the Designating Party has otherwise consented either in writing or on the record during the deposition to the showing of the Confidential Information to the witness.

13.     Witnesses shall not be permitted to retain copies of the Confidential Information or exhibits, although they may be reviewed in connection with the reading and signing of the final transcript by the deponent.

14.     Any person receiving Confidential Information shall not disclose such Information to any person who is not entitled to receive such Information under this Order. If Confidential Information is disclosed to any person other than in the manner authorized by this Order, the person responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of counsel for all parties and, without prejudice to other rights and remedies of any party, make a reasonable good faith effort to retrieve such material and to prevent further disclosure by it or by the person who received such Information.

15.     Unless otherwise consented to in writing, all Confidential Information and reproductions thereof shall only be used for the purposes of this action and for no other purpose whatsoever.[2]

16.     Disclosure of Confidential Information to persons other than those specified in paragraph 7 of this Protective Order shall be permitted only by mutual written consent of the parties or by further order of the Court.  However, nothing in this Protective Order prevents the use of Confidential Information or any Information obtained during discovery in this action, including depositions of third parties, in preparing for trial, nor shall any party be restricted from using such discovery materials at trial, subject to limits on disclosure and appropriate admissibility and evidentiary objections, if any, which may be deemed appropriate and necessary by the Court at the time.

---

[2] Pursuant to the Court's Order in Case No. 4:16-CV-3130, Docket Entry Number 117, discovery obtained in this case may be used by the parties in the other case, provided that any such information remains subject to protection of its applicable protective order.

17.     No Information shall be designated as Confidential Information or shall be subject to this Protective Order or any other obligation with respect to subsequent use or dissemination of Information if:  (a) the receiving party is already in possession of the Information or receives such Information at a later date from a source other than the producing party (unless the document or Information has been previously designated as confidential prior to this litigation), or (b) if the Information was accessible at any time to members of the general public.

18.     Nothing herein shall impose any restriction on the use or disclosure by a party of its own documents or Information, including the deposition testimony of its employees or experts, except to the extent such deposition testimony involves the disclosure of Information designed by another party as Confidential Information pursuant to the terms of this Order.

19.     In the event any Discovery Material originally designated as "Confidential" is later discovered to not be confidential by the terms of this Protective Order, such designation shall be honored by the parties until amended by agreement among the parties or until otherwise ordered by this Court in accordance with the provisions of this Order or until the conclusion of the litigation.

20.     A party may object to the designation of particular Confidential Information by giving written notice to the party designating the disputed Information. The written notice shall identify the Information to which the objection is made.  If the parties cannot resolve the objection within fourteen (14) days after the date such notice is received, it shall be the obligation of the party seeking to maintain the Confidential Information designation to file an appropriate motion, within twenty-one (21) days of the expiration of the fourteen (14) day resolution period, requesting that the Court determine whether the disputed Information should be subject to the terms of this Protective Order.  If such a motion is timely filed, the disputed

Information shall be treated as Confidential Information under the terms of this Protective Order until the Court rules on the motion. The witness or party making the designation shall have the burden of proof that the challenged Discovery Material is entitled to the protection of the particular designation of "Confidential."

21.     In the event that any Confidential Discovery is used in any court proceeding in this action or any appeal therefrom, it shall not lose its status as Confidential Information. All documents designated "Confidential" should be filed under seal and/or as a restricted document with the Court pursuant to the Federal Rules of Civil Procedure.

22.     Any party who inadvertently fails to identify documents as "CONFIDENTIAL," shall correct its failure by providing written notice of the error. Upon receipt of such notification, all documents, materials, or testimony so designated or re-designated shall be fully subject to this Order as if it has been initially so designated and shall be re-marked by the receiving party; provided, however, that the receiving party shall incur no liability for any previous treatment of such Information in conformance with its original designation. The party receiving such notice shall make a reasonable good faith effort to ensure that any analyses, memoranda, or notes which were internally generated based upon such Information shall immediately be treated in conformance with any such designation or re-designation. Notwithstanding the foregoing, no party may designate or re-designate materials under the Order later than thirty (30) days after the materials were produced to an opposing party pursuant to this Order.

23.     Any party who inadvertently discloses documents that are privileged or otherwise immune from discovery shall, promptly upon discovery of such inadvertent disclosure, so advise the Receiving Party and request that the documents be returned. The Receiving Party shall return

such inadvertently produced documents or certify their destruction, including all copies, within fourteen (14) days of receiving such a written request and shall not use such Information for any purpose until further order of the Court. The inadvertent production of any document or other Information during discovery in this action shall be without prejudice to any claim that such material is privileged under the attorney-client privilege, or protected from discovery as work product within the meaning of the rules of civil procedure, and no party or entity shall be held to have waived any rights by such inadvertent production. The party returning such inadvertently produced documents may thereafter seek re-production of any such documents pursuant to applicable law. Nothing herein will restrict the party from whom the return of the documents is requested from filing a motion with the Court contesting the designation of the material as privileged or protected by the work product doctrine or from referring to the fact that the material has been produced; provided, however, the party filing the motion cannot refer to the content of the document nor contend that any privilege has been waived.

24.     In the event a party produces two or more identical copies of a document and any such copy is designated with a lesser degree of confidentiality than any other copy, all such identical documents shall be treated as Confidential Information once the inconsistent designation is known. The producing party shall be responsible for informing the party receiving the inconsistently designated Discovery Material of the inconsistent designation; however, if any person subject to this Order receives such inconsistently designated Information, and has actual knowledge of the inconsistent designation, the person shall treat all copies as Confidential Information.

25.     Neither the taking of any action in accordance with the provisions of this Order, nor the failure to object hereto, shall be construed as a waiver of any claim or defense in this

action. This Order shall not be construed as a waiver of any right to object to the furnishing of Information in response to discovery and, except as expressly provided, shall not relieve any party or witness of the obligation to produce Information properly sought in the course of discovery. Nothing herein shall be construed to effect in any way the admissibility of any document, testimony, or other evidence at trial of this action. Nothing contained in this Order or any declaration of confidentiality or restriction hereunder shall be used or characterized by any party as an "admission" by a party opponent. The failure of a party to object to or to challenge a designation by another party of Discovery Material as "Confidential" shall not constitute an admission that the materials are entitled to any legal protection. The failure of a party to object or to challenge a designation by another party of Discovery Material as "Confidential" upon initial receipt of this material shall not constitute or be construed as a waiver of that party's right to subsequently object to or to challenge such designations at any later time.

26. This Protective Order does not prevent any party from asking the Court for a modification of the terms of this Protective Order, or from filing a motion seeking further or different protection from the Court.

27. At the final conclusion of this action, including any appeals, Plaintiff, Defendants, and their respective counsel of record shall destroy all copies of any Confidential Information produced to them by the other party pursuant to this Protective Order. Plaintiff, Defendants, and their respective counsel of record shall continue to maintain the confidentiality of all Confidential Information. Termination of these proceedings shall not relieve Plaintiff, Defendants, and their respective counsel of record from the obligation of maintaining the confidentiality of all Confidential Information that they have received or reviewed during the course of this action.

28.     This Protective Order shall be effective as of the date signed by counsel.

29.     This Protective Order does not limit the scope of discovery or restrict Plaintiff's or Defendants' discovery rights afforded by the Federal Rules of Civil Procedure.

Dated this 1st day of February, 2019.

BY THE COURT:

Cheryl R. Zwart
United States Magistrate Judge

## EXHIBIT A – UNDERTAKING

I hereby acknowledge that I have received the Stipulated Protective Order that has been entered into by the parties in the matter entitled *Streck, Inc. v. Barry Uphoff, et al.,* Case No. 8:17-cv-494.  I agree to be bound by the terms in the Protective Order with respect to any document or information which has been designated as Confidential Information by any party.

By: _____

Name: _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| STRECK, INC., a Nebraska Corporation, | No. 17-cv-00494-LSC-MDN |
| Plaintiff, | |
| v. | **STIPULATED PRODUCTION FORMAT AND E-DISCOVERY PROTOCOL** |
| STEVEN RYAN, CAROL RYAN and BARRY UPHOFF, | |
| Defendants. | |

COMES NOW, Plaintiff Streck, Inc. (hereinafter, "Streck") and Defendants Steven Ryan, Carol Ryan and Barry Uphoff (hereinafter and collectively, "Defendants"), to stipulate and jointly move the Court to enter the following ESI Protocol:

A.   **Preliminary Matters**

1.   The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

2.   Documents that present imaging or formatting problems shall promptly be identified and, if the documents cannot be readily re-produced without problems, the parties shall promptly meet and confer to attempt to resolve the problems.

3.   This Protocol is to be read in conjunction with the Protective Order that the parties anticipate the Court will enter in this matter.  To the extent that any

1

provision herein conflicts with the Protective Order, the Protective Order provision shall govern.

**B.**   **Document Image Format**.

1. Paper Documents - Hard copy documents shall be produced in single page TIFF. If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as they existed in the original when creating the image file. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained throughout the scanning or conversion process.

2. Electronic Files (except spreadsheets and presentations) - Electronic documents shall be produced in single page TIFF, with the exception of non-redacted spreadsheet, e.g. Excel, and presentations, e.g., PowerPoint; however, a requesting party may make a subsequent request for native format production upon particularized need pursuant to Paragraph I below.  Metadata for documents generated from native electronic documents shall be produced as set forth in Paragraph K.  Electronic files, whether converted to images or produced in native format, also shall be produced with parent and child files intact; appropriate Parent ID and Child ID numbers shall be provided. When a document is withheld for any reason and is part of a family of documents, its absence should be designated with a placeholder image with a corresponding production number, confidential designation, if any.

3. Spreadsheets and Presentations - Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain files to be produced in native file format in the first instance (*e.g.*, Excel, Lotus 123 or Power Point); the parties therefore agree the producing party shall produce spreadsheets, such as those created in Excel or Lotus 123 or presentations, such as PowerPoint, in native format pursuant to Paragraph I below. The parties reserve the right to omit placeholder images for large quantities of native files. The parties must disclose the Bates range of files being produced without placeholders, or otherwise appropriately identify them for the receiving party.

4. Electronic files, whether converted to images or produced in native shall be produced with the entire family files intact; appropriate Begin Family document ID and End Family document ID numbers shall be provided.

5. All TIFFs shall be placed in an Images folder with subfolders not to exceed 5,000 images per folder and accompanied by appropriate load files for the document management or litigation support software being used by the receiving party (such as .dii, .opt, .dat, etc.), which shall be placed in a data folder.

6. The parties agree that it is not necessary to search for relevant information from the following sources of electronically stored information:

   a. RAM (random access memory);

   b. fragmented files, or other deleted items that may reside in unallocated space on a device;

   c. logs of e-mail history;

   d. temporary Internet History such as cookies and cache;

e. non-executable and system files; and

f. legacy system ESI.

The parties agree that cause must be shown in order to discover information from these sources due to the additional cost and burden that may be associated with them, and the parties reserve the right to request that the cost of such retrieval and searching be shifted to the requesting party.

C. **Document Unitization**. If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a family relationship exists between the documents) shall be maintained throughout the scanning or conversion process.

D. **Privileged Documents**

1. Breaking family relationship - when a document is withheld for privilege and is part of a family of documents, its absence due to privilege should be designated with a placeholder image with a corresponding production number, which then should be noted on the contemporaneously prepared Privilege Log that is to be prepared pursuant to Paragraph N herein.

2. In order to provide searchable text, redacted items must be imaged and OCR'd after redaction.

3. If a native file needs to be redacted, it will be produced in redacted form as an imaged document.

4. Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

E. **Color**. Documents containing color need not be originally produced in color. However, if an original document contains color necessary to understand the meaning, context, or content of the documents, the producing party shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document. The requesting party agrees to pay for reasonable costs (if any) associated with the color scanning and production of color images of documents already produced.

F. **Duplicates**. To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) reside within a party's data set, each party is only required to produce a single copy of a responsive document. This de-duping should be done only on exact duplicate documents, meaning the parent and child documents are exactly the same. De-duplication done within and across custodians (horizontal de-duplication) is acceptable as long as both parties have provided notification of same. Also, any horizontal de-duplication must be done in a manner to preserve information on blind copy (BCC) recipients of emails. Parties must take care to ensure that when custodians are eliminated from a data set for review and production, de-duplication was not based on that custodian's data set. When horizontal de-duplication is employed, the producing party must provide information identifying the data sets from which duplicates were removed, such as through a "duplicate custodian" field.

"Loose" electronic files and user files will not be de-duplicated against email attachments of the same files. If a "Loose" electronic file or user file is a duplicate of a document in the e-

mail data (i.e., an attachment to an e-mail), the parties shall produce separately both the e-mail data, including the attachments, and the "Loose" electronic files and user files.

E-mail "Threading" - The parties are generally not required to produce an original e-mail and its responses thereto as separate, unique documents. The parties are allowed, but not required, to produce the final, all-inclusive "thread" to represent the comprehensive e-mail conversation. Any and all divergences from the all-inclusive thread by any custodian must be separately assessed for production. If a receiving party believes there is a need for production of emails separately within a given thread, the producing party shall produce them separately or the parties will promptly meet and confer to attempt to resolve the issue.

G.      **Application of Search Terms.**  A party must notify the other party if search terms are to be applied to cull down ESI and share the search terms used to locate documents potentially responsive to opposing party's RFPD.

H.      **Production Numbering.**  Each page of a produced document shall have a legible, unique page identifier (Production Number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information on the source document.  No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable), placeholder text (where applicable), redactions, and the Production Number identified above.  The confidential legend shall be "burned" onto the document's image at a location that does not unreasonably obliterate or obscure any information on the source document.  For native file production, the production number shall be prepended (along with any confidentiality labeling) to the beginning of the document and the native files will be placed in a Native folder.  An image placeholder will represent the native file and an

accompanying text file will be used to load the document link to the native file into the litigation support software.

Each party will be assigned a unique identifying name.

1. Plaintiff will use its name as the prefix and 6 digits (i.e., "Streck000001") to identify all paper documents, electronically stored information, or imaged documents converted from paper. (See above regarding native).

2. Defendants will use their name as the prefix and 6 digits (i.e., "Steven000001", "Carol000001", "Uphoff000001") to identify all paper documents, electronically stored information, or imaged documents converted from paper.

I. **Native File Production - -** [Please note that paragraphs 2-5 below also apply to the initial native production of spreadsheets and presentation files**.**]

1. The parties agree that after the initial production in TIFF, a party seeking production in Native format must demonstrate a particularized need for the production. If any documents were initially produced in TIFF, and native production is subsequently agreed to, the party shall produce a cross reference table (in .csv format) that references the native documents to the originally produced TIFF documents, showing the native file extension and the TIFF document number.

2. Native file production numbering. For all documents produced in native format, each party unique identifying name (see prepending above) and placed in a Natives folder.

3. For each document produced in native format, a HASH value shall be provided for each document and included with the production in the form of a cross-reference file (.csv, .dat or .txt) containing the metadata fields (see paragraph K).

4. If a file produced in native format is designated as "confidential," the Production Media on which this file is produced must be labeled appropriately.

5. For any file produced in native format that is entitled to be redacted pursuant to an agreement of the parties, applicable law or otherwise by Order of the Court, the parties shall meet and confer with respect to suitable techniques and methods of redaction to preserve the integrity of the data while protecting information subject to privilege or other protections. If a file cannot be redacted prior to production, the parties shall agree to take such other steps as may be necessary.

Redaction software - Upon request and subject to any proprietary restrictions imposed by third party licensors on the disclosures of information, the producing party shall describe the procedures and software used to redact any document or data existing in electronic form such that the receiving party can identify how information was redacted and can obtain and or evaluate the software.

J. **Production Media**. All productions shall be made by secure file transfer, such as Accellion. If a receiving party requires their production on CD-ROM, DVD, or external drive, it must notify the producing party in advance of the production. If a producing party cannot make a production via secure file transfer, it must likewise notify the receiving party in advance

and accommodate an alternative requested media. The secure file transfer or other production media must identify: (1) the producing party's name; (2) the production range; (3) the production date; and (4) a statement of whether the file transfer or media contains information that is subject to the Protective Order or confidentiality designation. If the production is made via secure file transfer, it must also provide instructions for downloading the materials and the required timeframe for the download.

K. **Meta-Data, Searchable Text and Other Field information**. The producing party's extractions of the following metadata fields, where available, will be accompanied by a load file to the requesting party:

- Title for user files, if it exist;

- Author for user files;

- (Application/document) Date created for user files;

- (Application/document) Last modified date for user files;

- (Application/document) Last accessed for user files;

- Date and time received for emails;

- Date and time sent for emails;

- Subject line for emails;

- To, From, CC and BCC for emails;

- File path;

- File Name;

- File size;

- Hash (also identify which value used);

- Application;

- File extension;

- Conversation Index for emails, if it exists;

- Duplicate custodian.

Producing parties will also produce the following additional information as described below with each production.

- Starting Production (Beginning document Production number);

- Ending Production (Ending document Production number);

- Parent Production Number and Child/Attachment Production Number;

- Custodian;

- Source (Location from which document was collected) or file path;

- Document Properties (i.e, Loose File, E-mail, Attachment, Hard Copy, Calendar Appt).

The metadata listed above shall be labeled as such in the "loadable" file and produced on Production Media and shall be provided in a manner suitable for importing the information in a commercially available document management or litigation support software such as Relativity, Summation or Concordance (.csv, .dat or .txt) and placed in a Data folder.

Searchable Text/OCR - For the images generated from native electronic files, a producing party shall produce full text extracted from the electronic files, accompanied by a load file. For redacted documents, full text consisting of OCR will be provided. The .txt/OCR will be provided in document level, in a Fulltext folder, with the docid (beginning bates number) and filepath location of the text provided in the .dat (located in the Data folder). It is the producing party's obligation to make sure that documents containing text are searchable to the extent

practicable. The producing party is obligated to promptly raise any issues that arise pertaining to non-searchable data containing text.

For any document where the body cannot be extracted, please generate and provide searchable text.

The parties also agree to provide OCR for images generated from paper documents if the producing party has it; the parties agree to negotiate how the costs of this OCR shall be shared.

L.  **Production of Other Electronic Documents**.  This stipulation only applies to the production of the following categories of electronic documents: e-mails (and any associated attachments) and user files (word processing documents, spreadsheets and presentations.)  The parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing, including databases, voicemail, websites, video, text messages, and social media pages.

M.  **Exceptions to Protocol**.  If the forms of production allowed by this Protocol present an undue burden or cost for a producing party, the parties shall meet and confer to agree on a reasonable, alternative form of production.  Any party may file a motion to seek individual relief from this Protocol.

N.  **Privilege Logs**.  The producing party will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data.  The privilege log will be produced within 45 days of each individual party's completion of all document production.  The parties agree that post-litigation communication with outside counsel regarding the current lawsuit does not need to be logged.  The contents of privilege logs must comply with the requirements of the District of Nebraska.

O. **Costs of Production**. In addition to those specific circumstances agreed to herein, the parties reserve the right to seek cost shifting as appropriate at a later time.

This Protocol does not restrict the parties' rights under Rule 26(b)(2)(B) or (C).

Dated this 1st day of February, 2019.

BY THE COURT:

_____

Cheryl R. Zwart
United States Magistrate Judge